UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
COLLEEN PARKER-LEON and STEVEN LEON, *on behalf of their minor son J.L.*,

                Plaintiffs,

    -against-

MIDDLE VILLAGE PREPARATORY CHARTER SCHOOL,

                Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-4548 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Colleen Parker-Leon and Steven Leon ("Plaintiffs") bring this action on behalf of their minor son, J.L., against Defendant Middle Village Preparatory Charter School ("MVP") alleging various common law causes of action and statutory violations under 29 U.S.C. § 701 ("Section 504 of the Rehabilitation Act") and 42 U.S.C. § 12132 (the "Americans with Disabilities Act" or "ADA"). (Compl. (Dkt. 2).) Plaintiffs maintain that J.L. was subjected to ongoing and pervasive bullying and harassment at MVP. (Id.)

Before the court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (See Def. Mot. to Dismiss ("Mot.") (Dkt. 19).) For the reasons stated below, Defendant's motion is DENIED.

**I.    BACKGROUND**

The court takes the following statement of facts from Plaintiffs' complaint. Plaintiffs Colleen Parker-Leon and Steven Leon are the parents of J.L., an 11-year old child and sixth grade student at Middle Village Preparatory Charter School in Queens, New York. (Comp.) J.L.

1

was diagnosed with ADHD and social anxiety and participated in an Individualized Education Program ("IEP") while attending MVP during the 2016-17 school year. (Id. ¶ 16.)

Plaintiffs allege that although J.L. initially enjoyed attending MVP, he started to complain about bullying within the first month of the school year. (Id. ¶¶ 17-18.) Specifically, Plaintiffs allege that J.L. was repeatedly mocked because of his disability and describe instances wherein one particular student ("A.O.") called J.L. "dumb" and "stupid," and pushed and "picked [him] up." (Id. ¶¶ 18-33.) Plaintiffs aver that J.L. was bullied on a "near daily basis," and although other students were involved, A.O. was the main perpetrator. (Id. ¶ 22.)

Plaintiffs maintain that they contacted MVP, including the Board of Trustees, multiple times from October 2016 through March 2017 regarding their son's complaints about bullying, but the school failed to respond and/or take remedial action. (Id. ¶¶ 19-33.) Plaintiffs allege that they notified the Board of MVP, and state that "six and a half months after [their] first complaint" they received a response that the Board "found no evidence of bullying and would take no further action." (Id. ¶ 39.) On April 6, 2017, Plaintiffs sent an e-mail to MVP, including the Board, stating in part: "I have informed you at least [eight] times of J.L. being bullied about his hairline, being called stupid and dumb by several classmates. I don't feel you are properly handling these issues." (Id. ¶ 33.) Plaintiffs maintain that MVP was made aware of the bullying and harassment repeatedly over the school year and that A.O. was transferred to a different classroom only after Plaintiffs retained an attorney. (Id. ¶¶ 39-41.)

Plaintiffs contend that J.L. suffered significant emotional distress as a result of MVP's alleged failure to address the bullying, and that he frequently made statements at home that he "hate[d] school" and "hate[d] life." (Id. ¶¶ 34-36.) Plaintiffs further allege that as a result of the

bullying, J.L. stopped attending after-school programs and, therefore, no longer received assistance with his homework. (Id. ¶ 35.)

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint with this court on August 2, 2017. (Compl.) Defendant answered Plaintiffs' complaint on August 29, 2017. (Answer (Dkt. 5).) Defendant then requested a pre-motion conference in anticipation of their motion to dismiss the case for lack of subject matter jurisdiction. (See Defs. Aug. 1, 2018 Letter (Dkt. 15).) The court granted Defendant's leave to move to dismiss the complaint. (Sep. 24, 2018 Order.) On October 26, 2018, Defendant filed the fully briefed motion to dismiss for lack of jurisdiction of subject matter. (See Mot.; Defs. Reply (Dkt. 19-3); see also Pl. Mem in Opp'n to Mot. ("Pl. Opp'n") (Dkt. 19-5).).

## III. LEGAL STANDARD

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." Lleshi v. Kerry, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015) (citations omitted); see Makarova, 201 F.3d at 113. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing Makarova, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171

(2d Cir. 2006) (internal quotation and citation omitted), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); see also APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003); Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. Makarova, 201 F.3d at 113.

## IV. DISCUSSION

Plaintiffs bring claims under Section 504 of the Rehabilitation Act of 1983 (the "Rehabilitation Act"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., alleging that Defendant "failed to protect J.L. from the repeated and frequent bullying which occurred because of his disability [] on the schools' premises" ("Count One" and "Count Two," respectively). (Compl. ¶¶ 42-60.) Plaintiffs also bring a variety of common-law claims, including negligence, negligent infliction of emotional distress, and negligent hiring and supervision ("Count Three," "Count Four," and "Count Five," respectively). (Id. ¶¶ 61-90.)

Defendant argues that Plaintiffs must first exhaust their administrative remedies with respect to any disability claim pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq prior to bringing the suit. (Mot. 4-10.) Plaintiffs, by contrast, contend that exhaustion of their claims is not necessary because their claims do not pertain to access to a free appropriate public education ("FAPE"), a right guaranteed by IDEA. (Pl. Opp'n at 3-4.)

For the following reasons, the court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.

### A. Statutory Background

"The IDEA requires States receiving federal funds to provide 'all children with disabilities' with a FAPE." Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 741 (2d Cir. 2018) (quoting 20 U.S.C. § 1412(a)(1)(A)), cert. denied sub nom., 139 S. Ct. 322 (mem.) (2018). "A FAPE must provide 'special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits.'" Id. (internal citations and quotation marks omitted). "A State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's] individualized education program,' or IEP." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 994 (2017) (alteration in original) (quoting 20 U.S.C. § 1401(9)(D)).

The "reach and requirements" of the Rehabilitation Act and Title II of the ADA "are precisely the same." Weixel v. Bd. of Educ. Of NYC, 287 F.3d 138, 146 n.6 (2d Cir. 2002). To establish a violation of either law, a plaintiff must demonstrate: "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 187 (2d Cir. 2015) (internal quotation marks and citation omitted). "Under both statutes, schools are required to provide 'a free appropriate public education' through special education and related services." Scaggs v. N.Y. Dep't of Educ., No. 06-CV-799 (JFB), 2007 WL 1456221, at *15 (E.D.N.Y. May 15, 2007) (citing 28 C.F.R. § 35.103 and 34 C.F.R. § 104.33).

### B. The IDEA's Exhaustion Requirement

#### 1. Overview

Under the IDEA, parents of disabled children are guaranteed "a variety of procedural safeguards," Mr. P, 885 F.3d at 741, including the right "to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)). These administrative proceedings are determined by and conducted pursuant to the laws of each state. See 20 U.S.C. § 1415(f)(1)(A), (g). "New York has opted for a two-tier administrative system" for review of IEPs:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

Cave, 514 F.3d at 245. "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." Id. (citing 20 U.S.C. § 1415(i)(2)(A)).

The exhaustion requirement applies to all suits that "seek relief for the denial of a FAPE," regardless of whether the suit was brought under the IDEA or "similar laws," which include the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 752 (2017); see 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

"[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." Fry, 137 S. Ct. at 752. "[I]f, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." Id. at 754; see L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (summary order) ("[I]f the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required . . . ." (quoting Polera v. Bd. of Educ., 288 F.3d 478, 481, 487-88 (2d Cir. 2002))).

"[T]he exhaustion requirement does not apply 'in situations in which exhaustion would be futile.'" Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007) (quoting Polera, 288 F.3d at 488). "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." Id. (internal quotation marks and citations omitted). Futility may exist where the case involves "systemic violations that could not be remedied by local or administrative agencies." Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 134 (2d Cir. 2012) (summary order) (quoting Cave, 514 F.3d at 249); accord J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 113 (2d Cir. 2004). "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies[,] and procedures, they generally do not have the authority to set new policies or to alter existing ones." King v. Pine Plains Cent. Sch. Dist., 918 F. Supp. 772, 781 (S.D.N.Y. 1996). While claims of systemic violations are often asserted as part of a class action, they "can be made at the individual level, provided 'a systemic policy is at stake' and 'the administrative officer has no power to correct the violation.'" J.Z. v. N.Y.C. Dep't of Educ., 281 F. Supp. 3d 352, 362 (S.D.N.Y. 2017) (quoting F.C. v. N.Y.C. Dep't

of Educ., No. 15-CV-6045 (PAE), 2016 WL 8716232, at *8 (S.D.N.Y. Aug. 5, 2016)). "The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement." Coleman, 503 F.3d at 205.

Exhaustion may also be excused where "the parents have not been notified that [administrative] remedies were available to them." Weixel, 287 F.3d at 149; see Dervishi ex rel. T.D. v. Stamford Bd. of Educ., 691 F. App'x 651, 652 (2d Cir. 2016) (summary order) ("[E]xhaustion is excused if the defendant failed to notify the plaintiff of her procedural rights under the IDEA.").

2. Application

In Fry, the Supreme Court provided guidance for determining whether "the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination," in the form of two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

137 S. Ct. at 756.

Fry itself concerned a disabled student who claimed that the elementary school she attended had violated her rights under Title II of the ADA and § 504 of the Rehabilitation Act for refusing to accommodate her service animal. Id. at 752. While the Supreme Court did not apply

its newly-crafted standard, instead remanding the case for reconsideration, it gave some indication, in dicta, of how the analysis might proceed:

> [Plaintiffs'] complaint alleges only disability-based discrimination, without making any reference to the adequacy of the special education services [the] school provided. . . . The complaint contains no allegation about the denial of a FAPE or about any deficiency in [the disabled student's] IEP [Individualized Education Plan]. More, it does not accuse the school even in general terms of refusing to provide the educational instruction and services that [the student] need[ed].

Id. at 758. Thus, as "nothing in the nature of the [plaintiffs'] suit suggest[ed] any implicit focus on the adequacy of [the student's] education," the Supreme Court indicated that the IDEA's exhaustion requirement likely did not apply to those particular ADA/Rehabilitation Act claims. Id.

While the Second Circuit has yet to interpret Fry, cases from this district provide further guidance. In Martinez v. New York City Department of Education, this court held that ADA/Rehabilitation claims alleging a failure to provide a reasonable accommodation for the plaintiff's nut allergy were subject to the IDEA's exhaustion requirement. No. 17-CV-3152 (NGG), 2018 WL 4054872, at *5 (E.D.N.Y. Aug. 24, 2018). In applying Fry, this court took notice of the fact that the plaintiff's complaint explicitly alleged that defendants had violated the IDEA by failing to provide plaintiff with a FAPE. Id. Next, this court considered the two questions posed in Fry, answering each in the negative: "As to the first question, the right that [d]efendants are said to have violated is specifically based on [plaintiff's] status as a student to whom special-education services are owed. As to the second question, the DOE does not have an obligation to provide special-education services to adult employees or visitors—just students." Id. Therefore, this court concluded that the ADA/Rehabilitation Act claims were subject to the exhaustion requirement and dismissed them for failure to exhaust. Id.

9

In Lawton v. Success Academy Charter Schools, Inc., 323 F. Supp. 3d 353 (E.D.N.Y. 2018), the plaintiffs, five students with disabilities, brought ADA/Rehabilitation Act claims alleging that a former principal had maintained a "Got to Go" list, which was intended to remove the plaintiff-students and other disabled students from the school. Id. at 361. The plaintiffs alleged that, pursuant to this policy, the former principal deliberately targeted and discriminated against disabled students, segregated disabled students from other students, and repeatedly suspended disabled students. Id. at 362. In applying Fry, Judge Block held the claims to be outside of the IDEA's exhaustion requirement:

> [W]hile plaintiffs' allegations occasionally touch on denial of a FAPE and failure to reasonably accommodate the students, the vast majority of the allegations, and thus the gravamen of the complaint, concern intentional discrimination and retaliation . . . .These allegations extend far beyond simple denial of a FAPE. The two questions posed by Fry support this conclusion. The disabled children would have a claim against a public library that placed them on a list of excluded patrons, used strict disciplinary rules to remove them on a daily basis, and threatened to call the police when faced with complaints about the mistreatment. So would disabled adults.

Id.

Finally, in Patrick v. Success Academy Charter Schools., Inc., 354 F. Supp. 3d 185 (E.D.N.Y. 2018), the plaintiffs brought ADA/Rehabilitation Act claims in connection with the school's disciplinary procedures and use of emergency medical services. Id. at 195. Judge Chen found that the ADA/Rehabilitation Act claims Plaintiffs advanced were beyond the reach of IDEA's exhaustion requirement because the primary concern of the case was the school's "allegedly discriminatory suspension processes and the alleged retaliatory calling of EMS or threats to do so." Id. at 228. Therefore, the court found that the "gravamen of plaintiffs' ADA/Rehabilitation Act claims does not concern the denial of a FAPE and that [plaintiffs'] ADA/Rehabilitation Act claims are not subject to the IDEA exhaustion requirement." Id.

Here, viewed in the light most favorable to Plaintiffs, the non-moving party, the claims Plaintiffs advance are beyond the reach of the IDEA's exhaustion requirement. See J.S., III, ex rel. J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 986 (11th Cir. 2017) (holding, post-Fry, that allegations that a disabled student was repeatedly removed from class could not be analyzed simply as a FAPE violation but were "cognizable as a separate [ADA/Rehabilitation Act] claim for intentional discrimination"); Martinez, 2018 WL 4054872, at *5. Plaintiffs' ADA/Rehabilitation Act claims primarily concern the discriminatory harassment of their son and the school's alleged failure to prevent such conduct, (Compl. at ¶ 41),[1] and therefore are not subject to the IDEA's exhaustion requirement.

Moreover, the application of the two-question Fry inquiry yields substantially the same answers as in Lawton and Patrick: the repeated harassment and bullying of a disabled student at a public library or a disabled adult employed at MVP could form the basis of a claim under the ADA/Rehabilitation Act. Lawton, 323 F. Supp. 3d at 362; Fry, 137 S.Ct. at 756. In Martinez, this court found that "the right that Defendants are said to have violated is specifically based on J.C.'s status as a student to whom special-education services are owed. As to the second question, the DOE does not have an obligation to provide special-education services to adult employees or visitors—just students." 2018 WL 4054872, at *5. Here, however, the gravamen of Plaintiffs' ADA/Rehabilitation Act claim does not concern the denial of a FAPE and is therefore not subject to the IDEA exhaustion requirement. (See e.g., Compl. ¶ 1 ("This case

---

[1] Defendant argues that this case is analogous to T.K. v. N.Y.C. Dep't of Educ., 779 F. Supp. 2d 289 (E.D.N.Y. 2011), a case in which parents of a disabled child brought an action against the DOE for the school's alleged failure to prevent bullying of their child. (Mot. at 7-8.) However, in T.K., Plaintiffs' claim was explicitly pled under IDEA, and much of Plaintiff's complaint revolved around concerns that the school improperly determined the child's Individualized Education Plan ("IEP"), id. at 294, neither of which are applicable to the case at hand. In other words, simply because a court has found that bullying can be a basis for finding the denial of a FAPE does not mean that bullying claims must be brought pursuant to IDEA.

involves a charter school's failure to protect its student, J.L., from bullying and harassment despite nearly seven (7) months of complaints from his parents."); ¶ 3 ("Plaintiffs' claims arise out of the repeated bullying and harassment their son J.L. endured during the 2016-2017 school year."); ¶ 41 ("Defendant failed to take appropriate action to investigate, discipline, prevent or correct the bullying. Defendant's failure to investigate and act contributed to an atmosphere of tolerance for bullying in Middle Village Prep")). Although Defendant contends that Plaintiffs' complaint explicitly pleads FAPE (Mot. at 4); see also (Id. ¶ 45), the complaint, read as a whole, is primarily about the school's failure to protect J.L. from the alleged harassment and bullying. See, e.g., Condit v. Bedford Cent. Sch. Dist., No. 16-CV-6566 (CS), 2017 WL 4685546, at *9 (S.D.N.Y. Oct. 16, 2017) ("Plaintiffs' Amended Complaint as a whole sounds in a concern that the Defendants failed to protect [the student] from harassment and bullying by another student, not that Plaintiff Parents were displeased with [the student's] IEP or were seeking changes to it.").

\* \* \*

Defendant has not raised any other arguments supporting dismissal of Plaintiff's ADA/Rehabilitation Act Claims. Thus, in light of this court's finding that Plaintiffs' ADA/Rehabilitation Act claims are not subject to exhaustion and Defendant's failure to brief the merits of these claims, Defendant's motion to dismiss is denied and the court need not address arguments pertaining to exceptions to the IDEA exhaustion requirement.

### C. Supplemental Jurisdiction

The only argument Defendant raises with regard to Plaintiffs' state law claims is that they should be dismissed because the district court lacks subject matter jurisdiction over Plaintiffs' federal claims. (Mot. at 10). Because the court has denied Defendant's motion to dismiss

Plaintiff's federal claims for lack of subject matter jurisdiction, the court declines to dismiss Plaintiff's state law claims.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. 19) is DENIED.

SO ORDERED.

                                          s/Nicholas G. Garaufis

Dated: Brooklyn, New York                 NICHOLAS G. GARAUFIS
       June 4, 2019                          United States District Judge